THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEPHEN D. GOODEY, Defendant-Appellant.

Fourth District   No. 4—91—0248

Opinion filed December 30, 1991.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On January 22, 1991, following a stipulated bench trial in the circuit court of Macon County, defendant Stephen Goodey was convicted of unlawful possession of cannabis. He was subsequently sentenced to 30 months' intensive probation supervision, assessed a street-value fine of $424 and a statutory lab fee of $50. He was ordered to pay a $25-per-month probationary service fee and to reimburse the county $150 for the value of the public defender's services. Defendant appeals, contending the trial court erred in denying his motion to suppress the evidence of the cannabis taken from him upon his arrest. We agree and reverse.

At the January 2, 1991, hearing on defendant's motion to suppress evidence, defendant testified he was walking down Warren Street near the intersection of Condit Street in Decatur at approximately 3 a.m. on October 1, 1990. Defendant was on foot—because he had experienced car trouble—when he was approached by two Decatur police officers. Defendant testified the two officers walked up to him, asked him if he was lost and told him he was the wrong color to be in the neighborhood. Defendant is white and the neighborhood he was in is predominantly black. Defendant started to tell the officers he was not lost but had car trouble and that was why he was in the area. Defendant further testified one officer moved him away from several black people standing on a street corner and asked him to empty his pockets. Defendant testified the police officer did not ask him his name or ask for identification until after he had emptied his pockets. Defendant was never told he was under arrest, nor was he presented with any warrant, and he did not consent to the search.

Defendant further testified he reached for his wallet when the police officer asked him to empty his pockets, but the officer indicated he wished to see the contents of his coat pockets. Each coat pocket contained a soft, mushy plastic bag with a leafy material inside, later determined to be cannabis. Defendant was then told to put his hands on the car, and was handcuffed and placed in the squad car.

Officer Larry Butler, an eight-year veteran of the Decatur city police department, testified the area of Warren and Conduit streets is a high drug-activity area and that hundreds of arrests for drugs had been made there. Butler testified that on October 2, 1990, he observed a blue pickup truck pull over to the east side of Warren Street. He watched defendant get out of the truck, walk to the corner, and start a conversation with several black males standing on that corner. Butler approached defendant, asked him what he was doing in the area, and asked for identification. Butler testified defendant stated he was looking for a friend and produced a driver's license. Butler testified that as he was reading defendant's driver's license, he observed defendant place both hands in his coat pockets and start to back away from him.

Butler stated at that point he decided to conduct a pat-down search of defendant. Defendant was placed against the squad car and Butler patted the exterior of defendant's clothing. Butler felt a mushy package in one of defendant's coat pockets but testified he could tell it was not a weapon. Butler then reached into that pocket and pulled out a clear plastic bag containing a green leafy material. Butler then reached into defendant's other coat pocket and pulled out a similar package. These packages were the objects on which the charges were based and for which suppression was sought.

■ Defendant contends (1) the initial stop by the officers was an unreasonable seizure because there was no reason to believe he was engaged in criminal activity; and (2) even if the initial stop was valid, the police officer exceeded his authority when he reached into defendant's coat pockets and removed the objects. We need not address defendant's first contention because we believe the trial court's determination that the frisk was proper was against the manifest weight of the evidence.

> "Under the doctrine of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, when, as contended by the State here, a valid stop has been made, an officer is permitted to conduct a limited search for weapons only where he reasonably suspects that he or another is in danger of attack. Section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 108—1.01) is in conformity with *Terry* and specifically authorizes peace officers to make such a limited search under those circumstances." (*People v. Morgan* (1985), 138 Ill. App. 3d 99, 101, 484 N.E.2d 1292, 1293.)

In *Morgan*, this court held the trial court erroneously failed to suppress evidence of cannabis found on the defendant when "[i]t [was]

difficult to see how a bag of cannabis could produce a bulge in defendant's coat which would resemble a weapon." *Morgan*, 138 Ill. App. 3d at 101-02, 484 N.E.2d at 1293.

This court's opinion in *People v. Ricksy* (1990), 206 Ill. App. 3d 302, 564 N.E.2d 256, is dispositive of this issue. There, the defendant was lawfully stopped by the police because of a defective brake light. Upon approaching the defendant's vehicle, the police officer noticed the butt of a hunting knife protruding from the back of the driver's seat on the right side of the vehicle. The officer ordered the defendant out of the car and proceeded to pat him down. During this pat-down, the officer felt a small, thick paper package in the defendant's front right pants' pocket. This package was approximately two inches by one inch in size. The officer removed the package, which turned out to be a manila envelope containing cocaine.

This court held the trial court erred in denying the defendant's motion to suppress the evidence as the search of the defendant was a violation of the fourth amendment to the U.S. Constitution. (*Ricksy*, 206 Ill. App. 3d at 310, 564 N.E.2d at 261.) Noting nothing in the record supported the officer's claim that he removed the package because he believed it was a weapon, and that its removal was for his own safety, this court stated:

> "Simple curiosity is not a sufficient basis to justify the removal of such an object from a person's clothing." (*Ricksy*, 206 Ill. App. 3d at 309, 564 N.E.2d at 261.)

This court then held that in order for an officer to lawfully remove an object the officer feels during a pat-down search from a person's clothing, that officer must believe the object might be a weapon and articulate a basis for that belief. *Ricksy*, 206 Ill. App. 3d at 309, 564 N.E.2d at 261.

In the instant case, nothing in this record supports the proposition that Butler felt the object in defendant's coat pocket was any sort of weapon. In fact, Butler's own testimony at the hearing on the motion to suppress evidence was that he knew the soft, mushy package was not a weapon. Butler testified that based on his experience as a police officer and other pat-down searches he had conducted, soft, mushy packages usually contain drugs, but he knew this package could not be a weapon.

This case is factually distinguishable from our decision in *People v. Day* (1990), 202 Ill. App. 3d 536, 560 N.E.2d 482, where the officer seized an object he believed to be a razor blade. In fact, the object seized there was a small, white envelope, known as a "druggist fold," utilized to hold loose drugs. This court held it was reasonable for the

trial court to find that a piece of paper could be folded in such a manner as to produce a tactile sensation similar to that of a razor blade. (*Day*, 202 Ill. App. 3d at 545, 560 N.E.2d at 488.) Here, the packages found in defendant's pockets could in no way have created a tactile sensation similar to any kind of weapon. Butler testified the package was soft and mushy and he did not believe it was a weapon. Therefore, Butler had no basis to remove the packages from defendant's pockets.

While the erroneous failure to suppress evidence usually requires only a reversal and remandment for a new trial, here the required suppression of the cannabis and the evidence of its taking from defendant would destroy any opportunity for the State to prevail on a new trial. Accordingly, we reverse the conviction and sentence but make no order for remandment.

Reversed.

GREEN, P.J., and KNECHT, J., concur.